

**SIGNED this 2 day of April, 2021.**

_____
**John T. Laney, III
United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **WILSON JERRY WYNN** | ) | **CHAPTER 12 BANKRUPTCY** |
| | ) | |
| Debtor. | ) | **CASE NO. 17-70604-JTL** |
| | ) | |
| | ) | |
| | ) | |
| **AGGEORGIA FARM CREDIT, ACA** | ) | |
| | ) | **ADVERSARY NO. 20-7015** |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **WILSON JERRY WYNN &** | ) | |
| **DEERE & COMPANY** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION ON PARTIES'
CROSS MOTIONS FOR SUMMARY JUDGEMENT**

This above styled adversary proceeding came before the Court on Plaintiff's, AgGeorgia Farm Credit, ACA ("AgGeorgia"), and Defendant's, Deere & Company ("Deere"), cross Motions for Summary Judgement. Def.'s Mot. for Summ. J, ECF No. 18; Pl. Mot. for Summ. J., ECF No. 21. After reviewing the arguments of the parties, this Court finds that the Debtor's name was seriously misleading on Deere's financing statement and its interest in the Tractor is inferior to AgGeorgia's interest. The Court, therefore, grants the Plaintiff's motion for summary judgement and denies Defendant's motion for summary judgement.

**I.    PROCEDURAL POSTURE AND FACTS PLED**

On July 1, 2013, Debtor, Wilson Jerry Wynn executed a document entitled "Loan Agreement-Security Agreement" payable to Deere for the purchase and financing of a 7215R tractor, serial number 1RW7215RVDA011595 ("Tractor"). Pre-Trial Stipulation of the Parties ¶ 1, ECF No. 17. Deere filed a Uniform Commercial Code ("UCC") financing statement on July 3, 2013 with the Clerk of Superior Court of Appling County, Georgia to perfect its interest, listing "Jerry W Wynn" as the Debtor's name. Stipulation ¶ 2, ECF No. 17.

On January 16, 2014, the Debtor executed a document titled "Nonrevolving Variable Rate Note" payable to AgGeorgia and an accompanying security interest in farm equipment, which expressly included the Tractor. Stipulation ¶ 5; Ex. E, ECF No. 17. In connection with the execution of the loan between AgGeorgia and Debtor, Debtor produced a Balance Sheet effective December 30, 2013 to AgGeorgia which disclosed that Deere had a lien on the Tractor. Stipulation ¶ 8; Ex. F, ECF No. 17. The Debtor also produced "payoff statements" which included Deere's lien on the Tractor. Stipulation ¶ 9; Ex. G, ECF No. 17. AgGeorgia filed a UCC financing statement on February 12, 2014 with the Clerk of Superior Court of Irwin County to perfect its interest, listing "Wilson Jerry Wynn" as the Debtor's name. Stipulation ¶ 10;

Exhibit H, ECF No. 17. From December 2011 to November 2016, the Debtor possessed a driver's license issued to him by the State of Georgia Department of Driver's Services which listed his name as "Wilson Jerry Wynn." Stipulation ¶ 4, ECF No. 17. On February 27, 2015, Deere filed an amendment to its filing statement in Appling County, Georgia to change the Debtor's name on the statement to "Wilson Jerry Wynn." Stipulation ¶ 11; Ex. I, ECF No. 17.

On June 19, 2017, the Debtor filed for Chapter 12 protection. *Wilson Jerry Wynn*, Case No. 17-70604, Chapter 12 Voluntary Pet., ECF No. 1. On August 8, 2017, Deere moved for adequate protection or relief from the stay for the equipment in the Debtor's possession, including the Tractor. *Id.,* Mot. for Adequate Protection, ECF No. 51 ¶ 5. Deere attached the 2013 security agreement and the 2015 amendment its motion, which was served to all parties including AgGeorgia. *Id.* Ex. 4, ECF No. 51.

The Debtor filed his proposed Chapter 12 plan on September 26, 2017. *Id.,* Chapter 12 Plan, ECF No. 73. The plan provided for Deere to be paid for its claims in the case, expressly including the Tractor. *Id.,* Chapter 12 Plan, ECF No. 73. The plan also provided for AgGeorgia to be paid for its claims in the case, including its loan to the Debtor secured partially by the Tractor. *Id.,* Chapter 12 Plan, ECF No. 73. AgGeorgia objected to the plan's confirmation but did not object to Deere's treatment under the plan regarding the Tractor. *Id.,* Obj. to Confirmation of the Plan, ECF No. 78.

On April 27, 2018, the Court confirmed the Debtor's Plan which included payments to Deere for the Tractor and to AgGeorgia for repayment of the loan secured by the Tractor. *Id.,* Order Confirming Chapter 12 Plan, ECF No. 132. On October 5, 2020, AgGeorgia filed a Complaint for Determination of the Validity, Extent, and Priority of Liens against the Debtor and

Deere. Pl.'s Compl., ECF No. 1. Both parties moved for summary judgement on February 19, 2021. Def.'s Mot. for Summ. J, ECF No. 18; Pl. Mot. for Summ. J., ECF No. 21.

## II. SUMMARY JUDGEMENT STANDARD

Under Federal Rule of Bankruptcy Procedure 7056, which incorporates the Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986). The Court "must view all evidence and make all reasonable inferences in favor of the nonmoving party in making this determination." *In re Delco Oil, Inc.*, 599 F.3d 1255, 1257 (11th Cir. 2010) "Once it appears from the record that there are no genuine issues of material facts, the burden shifts to the opposing party to establish that genuine issues of material facts in fact exist." *In re Weinhardt*, 156 B.R. 677, 679 (Bankr. M.D. Fla. 1993).

## III. FINDINGS OF FACT AND LEGAL ANALYSIS

There are three primary areas of law the parties discuss as potential grounds for relief: whether the debtor's name was seriously misleading on Deere's UCC statement, whether actual notice impacts the priority of the liens, and whether the res judicata bars AgGeorgia's claim.

1. **The debtor's name was seriously misleading on Deere's UCC statement**

Under § 9-303(c) of the Uniform Commercial Code, the "the local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in goods." Therefore, this Court looks to Georgia law to determine what effect, if any, Deere's interest would have against AgGeorgia.

Georgia law requires that, exceptions notwithstanding, "a financing statement must be

filed to perfect all security interests and agricultural liens." O.C.G.A § 11-9-310(a). For a financing statement to be effective, it must include the debtor's name. O.C.G.A § 11-9-502. Under O.C.G.A § 11-9-503(a)(4), if the Debtor has a Georgia driver's license, the financing statement should list the Debtor's name as listed on the driver's license. According to Georgia law, however,

> [i]f a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with subsection (a) of Code Section 11-9-503, the name provided does not make the financing statement seriously misleading.

O.C.G.A § 11-9-506(c). Deere listed the Debtor's name on its original financing statement as "Jerry W. Wynn," but the Debtor's name as listed on his driver's license was Wilson Jerry Wynn. Stipulation ¶¶ 2, 4, ECF No. 17. Although Deere listed the Debtor's name incorrectly on its initial financing statement, if Deere's financing statement would appear in a search of the Debtor's correct name, the financing statement would still have priority over subsequent correctly filed financing statements, including AgGeorgia's.

The Court finds that a search done with the standard search logic as described in O.C.G.A § 11-9-506(c) would not have disclosed Deere's initial financing statement. Deere supported its claim that the Debtor's name was not seriously misleading on its UCC statement with an affidavit, attached to which was a certified search done under the name "Wilson Wynn." Aff. of Chad Ashenberg, ECF No. 20. The search results included liens that predated Deere's loan filed under the name Jerry Wilson Wynn, which Deere argues is evidence the search would have also produced liens under Jerry W. Wynn. Def.'s Mot. for Summ. J, ECF No. 18; Aff. of Chad Ashenberg. AgGeorgia supported its claims with two affidavits, attached to one of which was an

exact name search that did not include Deere's lien. Aff. of Stuart E. Walker, ECF No. 26; Aff. of Andrew Wightwick, ECF No. 30.

In his affidavit in support of AgGeorgia's motion for summary judgement, Andrew Wightwick explained the difference between an exact name search as done by AgGeorgia and a certified search as done by Deere. Aff. of Andrew Wightwick, ECF No. 30. A certified search, like as done by Deere, adds a second step beyond the exact name search to cross-reference the file numbers of amended financing statements and returns them in addition to the original financing statements; the results of a certified search include more results than the exact name search would have disclosed. *Id.* The certified search, however, is not the standard search done by the filing office and is unpersuasive to the court. The search done by AgGeorgia, however, which used the exact name search as used by the filing office did not disclose Deere's lien. This Court finds filing office's standard search logic would not disclose Deere's financing statement under the name "Jerry W. Wynn" in a standard search for Wilson Wynn.[1]

Because a search done with the filing office's standard search logic would not have disclosed Deere's financing statement as filed on July 3, 2013, it was not perfected until it was amended. This Court finds that the name on Deere's financing statement was seriously

---

[1] Georgia has two standard search logics: the "Exact Search," or the exact name search as done by AgGeorgia, and a "Stem Search." If the searching party searches for a debtor, the filing office's "Exact Search" option that would only disclose exact matches to the debtor's name as entered. If the searching party uses the default "Stem Search" option, the search would disclose the debtor's name as entered and any additional results that begin exactly as entered. *UCC Name Search Logic*, GEORGIA SUPERIOR COURT CLERKS' COOPERATIVE AUTHORITY, https://search.gsccca.org/UCC_Search/files/UCC_Search_Logic.pdf. For example, "the system will match any record that EXACTLY matches the search string defined above, OR any record that BEGINS WITH the search string.' For example, a search for the name John Smith would match 'SMITH JOHN', 'SMITH JOHN A', 'SMITH JOHN ALEXANDER.'" Aff. of Andrew Wightwick, ¶ 5. Under either of these search options, Deere's lien would not be disclosed by the standard search logic under a search for Wilson Wynn.

misleading, making the financing statement ineffective until amended in 2015. Therefore, AgGeorgia's lien was perfected before Deere's and has priority over Deere's lien.

### 2. **Actual notice does not impact the priority of the liens**

Deere argues that, because AgGeorgia had actual notice of Deere's loan on the Tractor, AgGeorgia should not be entitled to priority. Def.'s Mot. for Summ. J, ECF No. 18. AgGeorgia argues that notice has no effect on the priority of its lien, citing a comment to the UCC addressing competing priorities on the same collateral. Pl. Mot. for Summ. J., ECF No. 21. This Court finds that, under Georgia law, actual notice does not affect the priority of liens and the first to perfect rule governs, giving AgGeorgia's lien on the Tractor priority over Deere's.

O.C.G.A. § 11-9-322 outlines the priorities of competing liens on the same collateral. Under § 11-9-322, the party that first files or otherwise perfects its security interest has priority over competing liens on the same collateral. The comment to § 11-9-322 states:

> A and B make non-purchase-money advances secured by the same collateral. The collateral is in Debtor's possession, and neither security interest is perfected when the second advance is made. Whichever secured party first perfects its security interest (by taking possession of the collateral or by filing) takes priority. It makes no difference whether that secured party knows of the other security interest at the time it perfects its own.

O.C.G.A. § 11-9-322 Off. Cmt. 4 Ex. 2. Because AgGeorgia properly perfected its interest before Deere properly perfected its interest, AgGeorgia's lien has priority over Deere's.

Deere argues that if AgGeorgia had actual notice of Deere's lien, that notice should negate AgGeorgia's priority based on Georgia law. This argument is unpersuasive to the Court. To support its position, Deere cites *Hopkins v. Kemp Motor Sales, Inc.,* 139 Ga. App. 471 (1976) and *Franklin Financial Company v. Strother Ford, Inc.,* 138 S.E.2d 679 (1964) in support of its position. Both of those cases were decided before Georgia adopted O.C.G.A. §§ 11-9-506 and 11-9-322 in 2001. Those cases cited the Uniform Commercial Code's definitions of notice when

interpreting whether notice affects priority under Georgia's Motor Vehicle Act, a wholly separate Georgia recordation system codified in Title Forty of the Georgia Code, not Title Eleven under which this case is decided. The comment to O.C.G.A. § 11-9-322 also adds that first to file is dispositive, "even though there may be no notice to creditors or subsequent purchasers and notwithstanding any common-law rule to the contrary." O.C.G.A. § 11-9-322 Off. Cmt. 4 Ex. 2. This Court, therefore, will not consider Georgia common law when evaluating the priority of liens governed by § 11-9-322. Under § 11-9-322, therefore, because AgGeorgia first properly perfected its lien on the Tractor, it has priority over Deere's lien.

### 3. Whether res judicata bars AgGeorgia's claim.

Finally, Deere argues that, because this issue could have been litigated or resolved before confirmation of Debtor's Chapter 12 plan, res judicata applies to AgGeorgia's claim. Def.'s Mot. for Summ. J, ECF No. 18. This Court disagrees. Section 1227(a) of the Bankruptcy Code, states:

> Except as provided in section 1228(a) of this title, the provisions of a confirmed plan bind the debtor, each creditor, each equity security holder, and each general partner in the debtor, whether or not the claim of such creditor, such equity security holder, or such general partner in the debtor is provided for by the plan, and whether or not such creditor, such equity security holder, or such general partner in the debtor has objected to, has accepted, or has rejected the plan.

11 U.S.C. § 1227(a). Specific case law on the claim preclusion effect of § 1227(a) is sparse. This language of § 1227(a), however, mirrors the language § 1327(a) of the Bankruptcy Code which explains the effect of confirmation on Chapter 13 plans. Therefore, case law decided under 11 U.S.C. § 1327(a) is persuasive on this issue. *See Hope v. Acorn Fin., Inc.*, 731 F.3d 1189, 1196 (11th Cir. 2013) (calling § 1327(a) and § 1227(a) "parallel provision[s]" when finding support from cases decided under § 1227(a) to support its interpretation of § 1327(a)).

Confirmation of plan has a "preclusive effect, foreclosing relitigation of any issue actually litigated by the parties and any issue necessarily determined by the confirmation order."

*Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015) (citation and internal quotations omitted). A plan confirmation order is nearly impenetrable as to the issues necessary for confirmation of the bankruptcy plan. *See e.g. United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 274–75 (2010) (finding that, while the bankruptcy court confirmed a Chapter 13 plan violative of the Bankruptcy Code, the creditor's post-petition objection was disallowed because the creditor had "notice of the error and failed to object or timely appeal.") "Upon confirmation, res judicata bars the assertion of any cause of action or objection which was raised, or could have been raised, prior to confirmation. The only rights which may be asserted by a party after confirmation are those provided for in the plan." *In re Clark,* 172 B.R. 701, 703 (Bankr. S.D. Ga. 1994) (internal citations omitted).

Deere claims that, because AgGeorgia could have raised this claim before confirmation, the Court should bar its claim in this case. Def.'s Mot. for Summ. J, ECF No. 18. The Debtor's confirmed plan, however, explicitly reserves the jurisdiction of the Court, until the Plan is completed in full, over the claims of any interested party including the "[a]llowance or disallowance of and determination of the amount[,] priority, validity, and dischargeability of all claims." *Wilson Jerry Wynn*, Case No. 17-70604, Chapter 12 Plan ¶ 22(g)(i), ECF No. 73.

Furthermore, Deere relies on the classifications of the creditors by the plan to state that the liens are already prioritized in the plan. Def.'s Mot. for Summ. J, ECF No. 18. In the Debtor's confirmed plan, Deere's lien on the Tractor is in Class 3 and AgGeorgia's lien on the Tractor is in Class 11. *Wilson Jerry Wynn*, Case No. 17-70604, Chapter 12 Plan ¶ 5, ECF No. 73. The plan, however, does not explicitly prioritize liens of the classes of creditors but only uses their classification to describe their treatment. *Id*. This Court finds that the priority of the liens of the collateral listed in the plan was neither litigated nor, because the Court confirmed the plan

without such litigation, necessary to have been litigated to confirm the plan. Therefore, the preclusive effect of plan confirmation does not apply to AgGeorgia's claim.

## IV. CONCLUSION

The Court finds that the Plaintiff, AgGeorgia, is entitled to summary judgement because the Defendant, Deere, filed a filing statement on which the Debtor's name is misleading. Neither actual notice nor the preclusive effect of the Debtor's plan affects AgGeorgia's claim. Accordingly, this Court will enter an order granting the Plaintiff's motion for summary judgement and denying the Defendant's motion for summary judgement.

END OF DOCUMENT